BRETT A. SHUMATE
Assistant Attorney General
Civil Division

YAAKOV M. ROTH
Principal Deputy Assistant Attorney General
Civil Division

TIBERIUS DAVIS
SEAN SKEDZIELEWSKI
Counsel to the Assistant Attorney General
Civil Division

S. PETER SERRANO
Special Attorney for the United States
First Assistant United States Attorney
Eastern District of Washington

CHARLES NEIL FLOYD
First Assistant United States Attorney
Western District of Washington

ALEXANDRA MCTAGUE
Senior Litigation Counsel

ALESSANDRA FASO
Senior Litigation Counsel
U.S. Department of Justice, Civil Division
Enforcement & Affirmative Litigation Branch
P.O. Box 386
Washington, D.C. 20044-0386
(202) 451-7728
alessandra.faso@usdoj.gov

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

COMPLAINT - 1

Plaintiff,

v.

STATE OF WASHINGTON; BOB FERGUSON, Governor of Washington, in his official capacity; NICHOLAS BROWN, Attorney General of Washington, in his official capacity; JULIE MEREDITH, Secretary of Transportation, in her official capacity; MARCUS GLASPER, Director, Department of Licensing, in his official capacity,

Defendants.

Case No.  2:26-cv-232

**COMPLAINT**

Plaintiff, the United States of America, by and through its undersigned counsel, brings this civil action for declaratory and injunctive relief, and alleges as follows:

**<u>INTRODUCTION</u>**

1.      Federal law enforcement agencies operate throughout the United States enforcing federal law, including the immigration laws in Title 8. Their jobs are dangerous as they frequently investigate and apprehend violent criminals including cartel members, gang members, sex offenders, human traffickers, and other violent offenders. These brave agents, like their local counterparts, rely on various tools and techniques to stay safe while performing their official duties, including taking certain measures to keep their activities and identities unknown to the general public and the criminals they investigate. One such tool is undercover license plates that cannot

easily be tied back to their agencies through records requests or other means. The State of Washington has issued confidential and undercover license plates to federal law enforcement agencies for many years. Indeed, such plates are explicitly authorized under Washington law.

2.      Since President Donald J. Trump took office for the second time in January 2025, some states have tried to obstruct the Federal Government's immigration enforcement efforts, even though control over immigration and the nation's borders is an exclusive Federal power. Washington has been one of the worst offenders. In January 2026, in response to a routine request for confidential license plates from Homeland Security Investigations (HSI), a subcomponent of the Department of Homeland Security (DHS), Washington informed HSI that it suspended the issuance and renewal of confidential and undercover license plates for DHS-affiliated entities, but not state or local agencies.

3.      Washington's new policy halting the issuance of confidential and undercover license plates and registrations to agencies affiliated with DHS, while continuing to issue them to state agencies, is discriminatory and a blatant violation of the intergovernmental immunity doctrine embodied within the Supremacy Clause.  The law also unconstitutionally regulates the federal government. The policy must be declared unconstitutional and invalid, and it must be enjoined.

## JURISDICTION AND VENUE

4.    The Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345.

5.    Venue is proper under 28 U.S.C. § 1391(b)(1) because at least one defendant resides in this district and all defendants are residents of the State.

6.    The Court has the authority to provide the relief requested under 28 U.S.C. §§ 1651, 2201, and 2202, and its inherent equitable powers.

## PARTIES

7.    Plaintiff, the United States of America, regulates immigration under its statutory and constitutional authorities. It is responsible for enforcing the federal immigration laws through its agencies, including the Departments of Justice, State, and Homeland Security (DHS), along with DHS's component law enforcement agencies, including U.S. Immigration and Customs Enforcement (ICE) (which includes HSI), U.S. Customs and Border Protection (CBP), and U.S. Border Patrol (USBP).

8.    Defendant Washington is a state of the United States. The State is at home, or resides in, all federal districts within the state.

9.    Defendant Bob Ferguson is the Governor of Washington and is being sued in his official capacity.

10.    Defendant Nicholas Brown is the Attorney General of Washington and

COMPLAINT - 4

is being sued in his official capacity.

11. Defendant Julie Meredith is the Secretary of Transportation and is being sued in her official capacity.

12. Defendant Marcus Glasper is the Director of Washington's Department of Licensing (DOL) and is being sued in his official capacity.

## LEGAL AND FACTUAL BACKGROUND

## THE SUPREMACY CLAUSE AND FEDERAL LAW ENFORCEMENT

13. The Supremacy Clause of the United States Constitution mandates that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. The Supremacy Clause incorporates principles of intergovernmental immunity, and thus, a state enactment is invalid if it "regulat[es] the United States directly or discriminat[es] against the Federal Government or those with whom it deals." *United States v. Washington*, 596 U.S. 832, 838 (2022) (citation omitted).

14. The President has a constitutional duty to "take Care that the Laws be faithfully executed." U.S. Const. art. II § 3.

15. Subordinate officers in various federal agencies assist the President in discharging that duty. *See Seila L. LLC v. Consumer Fin. Prot. Bureau*, 591 U.S.

COMPLAINT - 5

197, 203–04 (2020); *see also Tennessee v. Davis*, 100 U.S. 257, 263 (1879) (stating that the Federal Government "can act only through its officers and agents").

16.    Because the authority to execute the laws "extend[s] over the whole territory of the Union, acting upon the States and upon the people of the States," federal officers and agents "must act within the States." *Davis*, 100 U.S. at 263. Accordingly, federal law enforcement officers carry out their duties within the several states, including Washington.

17.    For example, DHS, through ICE, HSI, and CBP, is principally responsible for enforcing our Nation's immigration laws, including the Immigration and Nationality Act (INA), and, pursuant to Congress's power to "establish a uniform Rule of Naturalization," U.S. Const. art. I § 8, cl. 4, make up the framework for the "governance of immigration and alien status," *see Arizona v. United States*, 567 U.S. 387, 395 (2012).

18.    The INA confers upon the Executive Branch broad authority to inspect, investigate, arrest, detain, and remove aliens who are unlawfully present in the United States. *See, e.g.,* 8 U.S.C. §§ 1182, 1225–29a, 1231. As part of those enforcement efforts, DHS, through HSI, also investigates transnational crime and threats, including incidents of alien smuggling and human trafficking. *See* 8 U.S.C. §§ 1324, 1232.

COMPLAINT - 6

19.    Due to the nature of law enforcement operations, obtaining confidential registrations and license plates is critical to the success of those operations and to officer security. For example, sensitive law enforcement operations necessitating confidential license plates include the apprehension of fugitives, conducting surveillance, conducting drug investigations, fraud investigations, investigating missing persons and missing child cases, and conducting abduction investigations involving dangerous actors.

20.    Such operations require federal law enforcement officers to blend into the environment to avoid premature detection that could undermine the mission and place them at risk. If agents are forced to use a single traceable public plate, enforcement targets may be able to track and evade enforcement. The use of confidential registrations and license plates ensures that critical operations are not compromised before they begin.

21.    DHS law enforcement operations often involve the arrest of sex offenders, human smugglers, drug traffickers, firearm offenders, and complex fraud actors. These missions depend on the agencies' ability to conduct surveillance, approach targets safely, and execute arrests without alerting the targets. Confidentiality in these scenarios is essential to preventing violence, preserving evidence, and protecting the public.

**WASHINGTON STATE DEPARTMENT OF LICENSING'S POLICY**

22.    Washington's DOL is one of the departments within the Washington state Department of Transportation and is overseen by Defendant Marcus Glasper.

23.    Sections 46.08.065 through 46.08.068 of the Revised Code of Washington (RCW) and sections 308-96A-080 through 308-96A-095 of the Washington Administrative Code (WAC) address registrations for certain types of government vehicles and the use of undercover and confidential plates.

24.    Most Washington government vehicles are required to have "distinctive plates." RCW 46.08.065.

25.    Certain types of government vehicles, however, may display confidential or undercover plates. RCW 46.08.066.

26.    Subsection (3) of RCW 46.08.065, entitled, "**Publicly owned vehicles to be marked—Exceptions**," provides that "The department of enterprise services shall adopt general rules permitting other exceptions to the requirements of subsection (2) of this section for other vehicles used for law enforcement, confidential public health work, and public assistance fraud or support investigative purposes, for vehicles leased or rented by the state on a casual basis for a period of less than ninety days, and those provided for in RCW 46.08.066."

27.    RCW 46.08.066, entitled, "**Publicly owned vehicles – Confidential license plates, drivers' licenses, identicards – Issuance, rules governing**,"

provides that the DOL "may issue confidential license plates to" "[u]nits of local government and agencies of the federal government for law enforcement purposes only;" "[a]ny state official elected on a statewide basis for use on official business" "[a]ny other public officer or public employee for the personal security of the officer or employee when recommended by the chief of the Washington state patrol" and "[t]he office of the state treasurer." RCW 46.08.066(1)(a)-(d).

28. "The use of confidential license plates on other vehicles owned or operated by the state of Washington by any officer or employee of the state is limited to confidential, investigative, or undercover work of state law enforcement agencies, confidential public health work, and confidential public assistance fraud or child support investigations." RCW 46.08.066(2).

29. WAC 308-96A-080(2) provides that "[a]n undercover or confidential license plate is issued to government agencies when being used in confidential, investigative, or undercover work."

30. Undercover and confidential license "plates are used for official business by government agencies or any state elected official" and "[f]or the personal security of any other public officer, or public employee, for use on an unmarked publicly owned or controlled vehicle for the conduct of business for the period of time required." *Id.* (3)

COMPLAINT - 9

31. "An undercover license plate record will show fictitious names and addresses on all department records subject to public disclosure." *Id.* (4)(a).

32. "A confidential license plate record will show the government agency name and address on all department records subject to public disclosure." *Id.* (4)(b).

33. In or around October 2025, Washington's DOL began affirmatively denying requests by DHS to obtain and renew undercover license plates and registrations.

34. In January 2026, in response to a request for undercover license plates for HSI vehicles, Washington's DOL informed HSI that it was suspending the issuance and renewal of undercover license plates for DHS-affiliated entities for an indeterminate period.

35. In a May 22, 2026 letter to the Department of Justice, Attorney General Nicholas Brown confirmed that "[t]he Washington State Department of Licensing voluntarily provides hundreds of undercover plates to federal agencies each year. This includes providing license plates to the Federal Bureau of Investigation, the Drug Enforcement Administration, the U.S. Marshals Service, and the U.S. Secret Service." A true and correct copy of the letter is attached as **Exhibit A.** Conspicuously absent from the Attorney General's list of federal agencies that Washington State provides undercover plates to was DHS and its component agencies ICE and CBP.

COMPLAINT - 10

36. According to Washington's DOL, the state is reviewing DHS's activities in order to determine if they conform with the laws and rules governing the undercover license plate and registration program and the "Keep Washington Working Act," RCW 43.17.425, which provides that "no state agency, including law enforcement, may use agency funds, facilities, property, equipment, or personnel to investigate, enforce, cooperate with, or assist in the investigation or enforcement of any federal registration or surveillance programs or any other laws, rules, or policies that target Washington residents solely on the basis of race, religion, immigration, or citizenship status, or national or ethnic origin."

37. Under this new policy, the Washington DOL is requesting that DHS turn in all current undercover plates and obtain new registrations for each vehicle.

38. The Washington DOL is not permitting renewals of existing undercover plates for any DHS subcomponents. Previously issued undercover plates must be turned in, destroyed, and replaced with regular federal government license plates.

39. Registering a vehicle using Washington's regular process requires that the federal agency tie the registration to the agency itself and provide an address or a P.O. box that the agency maintains. WAC 308-96A-096(1)(a)-(d).

40. This applies to all DHS agencies, whether they are engaged in civil, criminal, immigration, or any other type of enforcement. This new policy does not,

COMPLAINT - 11

however, apply to any state or local agencies regardless of whether they engage in criminal, civil, or other duties. Indeed, Washington law provides for confidential plates for public health work, public assistance fraud, child support investigations, RCW 46.08.066(2), and security of officials, WAC 308-96A-080(3).

## WASHINGTON STATE DEPARTMENT OF LICENSING'S POLICY HARMS THE FEDERAL GOVERNMENT AND THE PUBLIC

41.    The United States has standing to bring this lawsuit where it "inten[ds] to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a [state] statute[,]" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014), and the Washington DOL's policy violates the Supremacy Clause and principles of intergovernmental immunity, and thus imposes a sovereign and irreparable injury on the United States, *cf. Arizona v. Yellen*, 34 F.4th 841, 851–53 (9th Cir. 2022); *Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000). The United States has sovereign authority to manage federal law enforcement activities and, under the Supremacy Clause, need not cede that authority to Washington (or any state) by abiding by its dangerous policy which jeopardizes federal law enforcement operations and the officers who carry them out. A favorable ruling would redress these harms.

42.    Even beyond the sovereign injury, which itself is sufficient for standing to seek an injunction, the Washington DOL's policy endangers officers and reduces

COMPLAINT - 12

operational effectiveness.

43.     DHS and its subcomponents should not be subject to the challenged policy, which is unconstitutional and recklessly disregards officer safety, public safety, and federal operational needs.

44.     The Washington DOL's policy poses detrimental impacts upon investigations and public safety by jeopardizing ongoing investigations that rely on discreet surveillance and inconspicuous movement.

45.     By refusing to issue confidential and undercover license plates to DHS and component agencies, the Washington DOL's policy is a *de facto* ban on issuing such plates "until they satisfy a state officer." *Leslie Miller, Inc. v. Arkansas*, 352 U.S. 187, 190 (1956).

46.     When an unmarked vehicle can be traced to a federal agency, the negative consequences for federal law enforcement officers can be immediate. Federal officers rely on confidential plates to investigate, monitor, and apprehend targets. They help officers avoid confrontations and evasions by those targets or other members of the public. Taking away those plates requires officers to use public, consistent, and traceable plates. As a result, enforcement targets can sometimes track and evade law enforcement. Members of the public can also use this information to follow and impede law enforcement operations.

47.     In the event an investigative vehicle is identified because confidential

COMPLAINT - 13

plates were not issued, subjects may destroy evidence, evade apprehension, flee the jurisdiction, take countermeasures that endanger the public, or otherwise alter their behavior.

48. Such risks stemming from the Washington DOL's policy are especially acute in drug trafficking, firearms trafficking, fraud, abduction, and missing child investigations. These sensitive investigations involve undercover meetings, controlled buys, and covert monitoring, where confidentiality is essential.

49. The inability to obtain confidential registrations and license plates disrupts a multitude of mission sets that require operational anonymity, including fugitive investigations, sex offender investigations, human trafficking investigations, threat assessments, protective intelligence, surveillance operations, task force operations, missing person and missing child cases, abduction investigations, fraud investigations, drug investigations, counterterrorism operations, and state and local collaborative operations.

50. Without confidential registrations and license plates, DHS may be forced to modify, delay, or forego operations, increasing risks to federal law enforcement officers and the communities they serve.

51. The Washington DOL policy thus not only seeks to dictate how DHS officers carry out their duties, but it does so to the detriment of the officers and the public.

COMPLAINT - 14

52.    Undercover license plates also ensure that the Washington DOL remains the custodian of sensitive ownership information, meaning only authorized individuals may access these records.

53.    Protecting the identities of DHS officers is necessary in part due to the increasing threats of targeted harassment and retaliation against federal officers and agents for simply doing their jobs.[1] While such threats have always existed, they have increased exponentially, requiring new tactics to mitigate the harms to officer safety and operational effectiveness.

54.    Increasingly, members of the public photograph, film, and publish federal enforcement actions online and include the personal identities of federal officers for the sole purpose of intimidation and harassment. This content is directly used by members of organized crime and transnational criminal organizations in serious and potentially deadly ways.[2]

55.    For example, some individuals photograph officers' faces and run them through facial recognition applications that search social media and doxxing sites such as ICESpy.org, ICEList.is, and ICEList.info. Once a match is made, they often search for family members, including children, and disseminate this information

---

[1] Press Release, DHS, 8000% Increase in Death Threats Against DHS, ICE Law Enforcement as They Risk Their Lives to Remove the Worst of the Worst (Oct. 30, 2025), https://perma.cc/VXK9-MSBQ

[2] *See, e.g.,* https://www.dhs.gov/news/2026/03/31/anti-ice-agitator-doxxes-ice-officer-north-carolina

COMPLAINT - 15

online, allowing people to track, harass, and obstruct law enforcement.

56. This opens officers up to harassment, tracking, and assaults in the performance of their duties in the field. These threats are coming from rioters, illegal aliens, as well as "highly sophisticated gangs like Tren de Aragua and MS-13, criminal rings, murderers, and rapists."[3] ICE officers are facing an 8,000% increase in death threats and more than a 1,000% increase in assaults, which are facilitated by doxxing websites that broadcast the identities and home addresses of officers and their families, encouraging retaliation against them.

57. Stripping DHS-affiliated agencies of the ability to remain confidential eliminates this safeguard and increases the risk that criminal actors or hostile organizations could obtain sensitive information.

58. Moreover, it is in the public interest to enjoin the Washington DOL policy where state and local agencies routinely rely on DHS partners for specialized resources, personnel, and operational support, especially during high-risk or large-scale incidents. Compromising the anonymity of DHS vehicles reduces the effectiveness of this support and limits the ability of DHS and its subcomponents to respond quickly and safely when state and local partners request assistance.

59. Confidential vehicle registrations are a critical component of safe,

[3]https://www.dhs.gov/news/2025/10/14/bounties-originating-mexico-offered-shoot-ice-and-cbp-officers-chicago

COMPLAINT - 16

effective, and lawful federal law enforcement operations.

60. Washington clearly understands that these plates can be crucial to law enforcement, which is why it offers them to state and local law enforcement, as well as other federal law enforcement agencies. Until recently, Washington provided undercover and confidential plates to DHS and its subcomponents. By boldly stripping this important tool from only federal immigration officers, Washington has undermined those officers' ability to safely and effectively enforce the law.

61. The Washington DOL policy introduces substantial, unnecessary, and entirely preventable risks. It undermines federal security safeguards, conflicts with congressional intent, and weakens Washington's broader public safety posture.

62. The United States is irreparably harmed by policies that violate the Supremacy Clause by discriminating against and regulating the United States, thus impinging on the ability of the United States to carry out its functions through its Executive agencies, particularly in the context of its sovereign functions, such as federal civil immigration enforcement. Further, the policy is newly issued and therefore likely to be enforced, and the policy plainly prohibits DHS agencies from obtaining undercover and confidential license plates and vehicle registrations.

63. There is no other adequate remedy at law.

64. The public interest favors maintaining our system of federalism and the constitutional lines drawn between federal and state power and enabling the Federal

COMPLAINT - 17

Government to carry out its functions as mandated by the Constitution and Congress.

65. The public interest also favors allowing federal officers to safely and effectively enforce the laws of the United States.

66. The United States also faces a traditional pocketbook harm. Washington is requiring DHS components to turn over existing confidential plates that were lawfully acquired and paid for. It then requires DHS to purchase new public registrations. This has imposed an unjustified and substantial cost on DHS.

## CLAIMS FOR RELIEF

### COUNT I

### VIOLATION OF THE SUPREMACY CLAUSE
### (UNLAWFUL DISCRIMINATION AGAINST THE FEDERAL GOVERNMENT)

67. Plaintiff hereby incorporates paragraphs 1 through 66 of this Complaint as if fully stated herein.

68. The Washington DOL's policy to refuse the issuance of undercover and confidential license plates and registrations to all DHS components discriminates against the Federal Government.

69. The Washington DOL's policy discriminates against the Federal Government by refusing to issue undercover and confidential license plates and registrations to DHS and all of its subcomponents, the agencies primarily

COMPLAINT - 18

responsible for the enforcement of federal civil immigration laws, while issuing confidential plates and registrations to state and local law enforcement to engage in criminal and civil enforcement operations.

70. Indeed, Washington denies confidential plates and registrations to all DHS components, whether they are engaged in civil immigration enforcement, criminal enforcement, or anything else. Washington has gone so far as to require DHS to turn over or destroy existing plates and re-register.

71. On the other hand, Washington continues to provide confidential plates and registrations to state and local law enforcement engaged in both civil and criminal enforcement. Washington law explicitly provides undercover plates to state officials engaged in civil activities such as public health work, public assistance fraud, child support investigations, RCW 46.08.066(2), and security of officials, WAC 308-96A-080(3).

72. Accordingly, the Washington DOL's policy unlawfully discriminates against the Federal Government in violation of the Supremacy Clause and is unconstitutional and invalid.

**COUNT II**

**VIOLATION OF THE SUPREMACY CLAUSE**
**(UNLAWFUL REGULATION OF THE FEDERAL GOVERNMENT)**

73. Plaintiff hereby incorporates paragraphs 1 through 66 of this Complaint as if fully stated herein.

COMPLAINT - 19

74. The Washington DOL's policy constitutes an unlawful regulation of the Federal Government.

75. Washington understands the benefits of undercover and confidential plates to law enforcement. Indeed, until recently it provided undercover and confidential plates to all federal agencies regardless of the type of law enforcement they were engaged in. And it continues to provide undercover and confidential plates to state and local officers engaged in civil and criminal enforcement.

76. Yet now the Washington DOL's policy forces all DHS agencies to not only register for normal public plates, but to affirmatively turn over or destroy existing plates the agencies lawfully acquired and paid for.

77. The Washington DOL's policy does not simply set a general condition to operate a vehicle in the state, instead it directly regulates a core government function by telling federal law enforcement that they must turn over existing valid confidential plates and destroy them simply because Washington disapproves of their federal function.

78. Even if Washington begins issuing confidential plates to some federal law enforcement but not for civil immigration, Washington would still be regulating a core federal function by telling federal agencies they cannot enforce certain laws if they want an otherwise available plate.

79. By setting this condition, Washington seeks to regulate the Federal

Government by dictating how federal agents may do their jobs in Washington.

80. Accordingly, the Washington DOL's policy unlawfully regulates the Federal Government in violation of the Supremacy Clause and is unconstitutional and invalid.

## **PRAYER FOR RELIEF**

WHEREFORE, the United States respectfully requests the following relief:

A. That this Court enter a judgment declaring that the Washington DOL's policy as applied to the Federal Government is unconstitutional and invalid because it discriminates against the Federal Government;

B. That this Court enter a judgment declaring that the Washington DOL's policy as applied to the Federal Government is unconstitutional and invalid because it regulates the Federal Government;

C. That this Court permanently enjoin Defendants, as well as their successors, agents, servants, employees and attorneys, and all those working in concert with them, from enforcing the policy against federal agencies and officers;

D. That this Court award the United States of America its costs and fees in this action; and

E. That this Court award any other relief it deems just and proper.

COMPLAINT - 21

DATED: May 27, 2026

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

YAAKOV M. ROTH
Principal Deputy Assistant
Attorney General
Civil Division

TIBERIUS DAVIS
SEAN SKEDZIELEWSKI
Counsel to the Assistant
Attorney General
Civil Division

S. PETER SERRANO
Special Attorney for the United States
First Assistant United States Attorney
Eastern District of Washington

CHARLES NEIL FLOYD
First Assistant United States Attorney
Western District of Washington

ALEXANDRA MCTAGUE SCHULTE
Senior Litigation Counsel

*/s/ Alessandra Faso*
ALESSANDRA FASO
Senior Litigation Counsel
U.S. Department of Justice
Civil Division
Enforcement & Affirmative Litigation
Branch
P.O. Box 386
Washington, D.C. 20044-0386
(202) 451-7728
alessandra.faso@usdoj.gov
*Attorneys for the United States of America*

COMPLAINT - 22